UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| GF&C HOLDING COMPANY,<br>               Plaintiff,<br>  v.<br><br>HARTFORD CASUALTY INSURANCE COMPANY, and HARTFORD STEAM BOILER INSPECTION & INSURANCE COMPANY,<br>               Defendants.<br><br>BACKUPS PLUS COMPUTER SERVICES, LLC,<br>               Plaintiff,<br>  v.<br><br>HARTFORD CASUALTY INSURANCE COMPANY, and HARTFORD STEAM BOILER INSPECTION & INSURANCE COMPANY,<br>               Defendants. | Case No. 1:11-cv-00236-BLW<br>(Lead Case)<br><br>Consolidated with<br>Case No. 1:11-cv-00237-BLW<br><br>**MEMORANDUM DECISION AND ORDER** |

## INTRODUCTION

The Court has before it Defendants' Motion for Summary Judgment. The Court heard oral argument on January 23, 2013 and took the motion under advisement. For the reasons explained below, the Court will grant the motion.

## BACKGROUND

On May 21, 2009, Plaintiff Backups Plus Computer Services, LLC (Backups) owned hard drives which failed.  These hard drives, known as SAN devices, were integral to Backups's operation of virtual servers. On May 21, 2009, the Plaintiff GF&C Holding Company (GF&C) was a client of Backups and stored its data on Backups's servers. As a result of the failure of the hard drives, Backups and GF&C were unable to access their data stored on the servers.

At that time, Backups and GF&C each had insurance policies with Defendant Hartford Casualty Insurance Company (Hartford). GF&C's policy was Standard Property Coverage with additional relevant coverage through a Computers and Media endorsement, Stretch endorsement, and Super Stretch for Technology endorsement. Backups's policy was Special Property Coverage which included Equipment Breakdown Coverage. Backups also had additional relevant coverage through a Computers and Media endorsement and a Super Stretch for Technology endorsement. Although Hartford reinsured the Equipment Breakdown portion of Backups's policy with Defendant Hartford Steam Boiler Inspection & Insurance Company (HSB), Plaintiffs did not enter into a contractual relationship with HSB.

After the failure of the hard drives, Backups and GF&C submitted claims to Hartford. Consequently, Hartford submitted its own claim under its reinsurance policy to HSB. Then, HSB engaged an independent analyst, LWG, to examine the hard drives to determine the cause of the failure. Neither party disputes LWG's finding that the hard

drives failed because of bad sectors on at least one drive; it is the cause of the bad sectors which is at issue. LWG concluded that, although it could not determine the precise cause of the bad sectors, they were not caused by physical damage resulting from a head crash, and that there was no physical damage to the disks in the hard drives. Thus, it determined the bad sectors were a result of normal wear and tear.

After receiving LWG's report, on July 8, 2009, HSB sent a letter and the reports to Hartford denying liability under the Equipment Breakdown coverage. Subsequently on July 19, 2009, Hartford sent letters to GF&C and Backups denying coverage for the failure of the hard drives and the resulting loss of data.

Plaintiffs contend that Hartford and HSB wrongfully denied them coverage under their respective policies. Therefore they each filed a lawsuit against both defendants for the following claims: (1) breach of contract, (2) breach of duty of good faith and fair dealing, (3) bad faith, and (4) intentional misrepresentation. Also, they alleged an additional claim against HSB for intentional interference with a contract. Now Defendants seek summary judgment on all claims.

## LEGAL STANDARD

Summary judgment is appropriate where a party can show that, as to any claim or defense, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). One of the principal purposes of the summary judgment "is to isolate and dispose of factually unsupported claims . . .." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural

MEMORANDUM DECISION AND ORDER - 3

shortcut," but is instead the "principal tool[ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986). There must be a genuine dispute as to any *material* fact – a fact "that may affect the outcome of the case." *Id.* at 248.

The evidence must be viewed in the light most favorable to the non-moving party, and the Court must not make credibility findings. *Id.* at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine dispute as to material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001)(en banc). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson,* 212 F.3d 528, 532 (9th Cir.2000).

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in her favor. *Deveraux*, 263 F.3d at 1076. The non-moving party

must go beyond the pleadings and show "by her [ ] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine dispute of material fact exists. *Celotex,* 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1029 (9th Cir. 2001) (quotation omitted). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). Statements in a brief, unsupported by the record, cannot be used to create a factual dispute. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995).

## ANALYSIS

Generally, Idaho courts construe insurance contracts in accordance with their plain, unambiguous language; but where the insurance contract is ambiguous, it must be construed in a light most favorable to the insured and in a manner which provides full coverage for the indicated risks rather than narrowing its protection. *Cascade Auto Glass, Inc. v. Idaho Farm Bureau Ins. Co.*, 115 P.3d 751, 754 (Idaho 2005). "In construing an insurance policy, the Court must look to the plain meaning of the words to determine if there are any ambiguities." *Id.* The Idaho Supreme Court has made clear that the question of whether an insurance policy is ambiguous is a question of law for the court to determine. *Farm Bureau Mutual Insurance Co. Of Idaho v. Schrock*, 252 P.3d 98, 102 (Idaho 2011) (citing *Cherry v. Coregis Insurance Co.*, 204 P.3d 522, 524 (Idaho 2009)).

Like other contracts, insurance policies are ambiguous if they are reasonably subject to conflicting interpretations. *Id*.

"The burden is on the insurer to use clear and precise language if it wishes to restrict the scope of coverage, and exclusions not stated with specificity will not be presumed or inferred." *Clark*, 66 P.3d at 245. However, standardized contract language must necessarily be somewhat general, in anticipation of varying circumstances of the facts. *Foster v. Johnstone*, 685 P.2d 802, 806 (Idaho 1984). If the language of the policy is clear and unambiguous, then it will be given its ordinary and plain meaning. *Id*.

When there is no ambiguity, the burden is on the insured to demonstrate that a loss is within the general coverage provisions of the insurance contract. *Buckley v. Orem*, 730 P.2d 1037, 1042 (Idaho Ct. App. 1986). Then the insurer bears the burden to show that an exclusion applies. *Id*. *See also Perry v. Farm Bureau Mut. Ins. Co. of Idaho,* 936 P.2d 1342, 1345 (1997).

1.  **Breach of Contract Claims Against Hartford**

The Hartford policies in dispute are similar in most respects. Although the property at issue and the events that took place are the same, the application of coverage and exclusions to each policy differs.

A.  *Backups*

The Backups general grant of coverage is the Special Property Coverage which includes additional coverage for "Equipment Breakdown" and a coverage extension for Data and Software. *Backups Policy* at 19, 29, Dkt. 26-7.The general policy, additional

coverage, and coverage extension are all subject to the same exclusions. *Id*. The policy also has Computers and Media and Super Stretch for Technology endorsements. Reading these provisions together, it is clear that for a claim to be covered under the Backups policy it must involve covered property which sustained a "covered cause of loss" resulting in physical damage or direct physical loss. *Id*. at 16.

The Backups policy can thus be fairly described as an "all risk" policy, meaning that all risks or causes are covered unless they are excluded or limited. *Backups Policy* at 17, Dkt. 26-7. Although Backups must show threshold coverage for a claim, the insurer, Hartford, bears the burden of proving that an exclusion or limitation applies. *Perry v. Farm Bureau Mut. Ins. Co. of Idaho,* 936 P.2d 1342, 1345 (1997). Thus, Hartford bears the burden to show that the cause of the bad sectors is excluded from coverage under the policy. Hartford has met that burden.

The general policy exclusions state "[Hartford] will not pay for physical loss or physical damage caused by or resulting from…wear and tear…[or] latent defect." *Backups Policy* at 32. Consequently, Hartford denied coverage under the policy because it determined that the failure of the hard drive was due to an excluded cause of loss – "wear and tear" or a latent defect. *Backups denial letter July 15, 2009* at 10, Dkt. 26-9. Its determination was based on LWG's conclusions that the bad sectors, which caused the failure of the hard drives, were not a result of physical damage to the disks or read/write heads. *LWG Loss Analysis July 7, 2009* at 33-34. Rather, they were the result of degradation of the magnetic layer on the disks, and thus were a result of wear and tear. *Id*.

Plaintiff's brief criticizes the determination of wear and tear by trying to create internal conflict within LWG's reports. First, Plaintiff contends that LWG made contradictory statements regarding its determination that the cause of the bad sectors was wear and tear. *Pls. Response* at 3. Specifically, Counsel directs the Court to email correspondence between Hartford and HSB regarding whether microscopic analysis of the drives would provide more information about the type of wear and tear that occurred.[1] *Email correspondence between S. Prause and S. Brody* at 115, Dkt. 35-3. Notably, LWG was not a direct participant in the correspondence. Even if inferring that LWG told Hartford it could not determine the exact cause of the wear and tear without microscopic analysis, it does not follow that LWG said that the cause was not wear and tear but that microscopic analysis would identify the cause.

Additionally, although the Plaintiff advances the tenuous proposition that further testing would have resulted in a determination that the cause of loss was not wear and tear, they point to no technical evidence in the record which supports that position. Statements in a brief, unsupported by the record cannot be used to create a factual dispute. *Barnes*, 64 F.3d at 1396 n.3.

Additionally, Plaintiff argues that the term "wear and tear" is not defined in the policy and is therefore ambiguous. *Pls. Response* at 3. Plaintiff does not argue that the

---

[1] In the email, Hartford states that in a discussion with LWG, LWG could not give a more precise cause for the bad sectors without microscopic analysis. *Email correspondence between S. Prause and S. Brody* at 115, Dkt. 35-3. HSB replies to Hartford stating that its own discussion with LWG, LWG said that the drives did not suffer physical damage and that microscopic analysis would not provide them with any more information that would change the HSB's position. *Id.*.

"ambiguous" term is therefore unenforceable in the policy or should be somehow construed against Hartford in the interpretation of the policy. Instead its premise is that the term creates a conflict within LWG's findings. It contends that in the Computers and Media endorsement, wear and tear is listed with the terms "marring or scratching" which implies that wear and tear must be a type of physical damage. Thus its argument is that wear and tear is physical damage, but LWG found no physical damage; therefore LWG's conclusion of wear and tear is flawed.

However, the Court declines to adopt this argument. Although "wear and tear" is a broad term, it is not ambiguous. Standardized contract language is necessarily broad to account for varying factual circumstances. *Foster*, 685 P.2d at 806. Wear and tear may manifest itself differently depending on the property and the circumstances; utilizing such a general term is necessary to apply the standard policy to a variety of policyholders. Thus, a finding of wear and tear does not depend upon a finding of physical damage.

Furthermore, LWG supported its conclusion that the bad sectors were caused by wear and tear:

> "Bad sectors are identified primarily when sector on the [hard drive] is not able to store data any longer. This is most often caused by the degradation of the magnetic layer or physical damage sustained by a head crash. Brand new [hard drives] from the manufacturer already have mapped bad sectors. This is caused either by the manufacturing process, handling of the device, and/or degradation of the magnetic layer over a period of time. Depending on the severity of the degradation of the magnetic layer, the time lapse of these increasing bad sectors is not determinable." *LWG Loss Analysis June 16, 2009* at 28.

> "The read/write heads are fully operational and have not sustained damage. Normally when a read/write head experiences a head crash,

> there is a failure of that device. Because there is no damage consistent with the claimed head crash, LWG must conclude that the damage is related normal wear and tear." *LWG Loss Analysis July 7, 2009* at 32.
>
> "LWG has actually opened the [hard drives] and observed all of the factors involved in the failure of the [hard drive] there is no choice but to conclude that the drive failed due to wear and tear. [Backups] may feel that the failure is premature but it is still related to wear and tear experienced from normal operation of the [hard drive]." *Id.* at 33.

Ultimately, LWG's report, which is not contradicted by any expert analysis in the record, is unassailable. Therefore, Hartford has met its burden that the exclusion for wear and tear applies to the facts in the record. Hence, Plaintiff's claim is not covered under the general grant of coverage, or the additional coverage, or coverage extension contained therein.

In addition to the general policy, Plaintiffs had two endorsements which extended coverage for computers, technology, and media. Specifically, Backups had Computers and Media and Super Stretch endorsements. *Backups Policy* at 20-23, 45-53, Dkt. 26-8. The Super Stretch endorsement must be analyzed in accordance with the Computers and Media endorsement because it expressly states it is "subject to the provisions of the Computers and Media [endorsement]." *Id.* at 45. Thus a threshold determination of applicability under the Computers and Media endorsement will determine the applicability of the Stretch and Super Stretch endorsements.

Although the general policy is an all-risk policy, the Computers and Media endorsement is not an all-risk endorsement. *Id.* at 22. Specifically, the endorsement states that the covered causes of loss and the exclusions in the Special Property Coverage form

do not apply. *Id*. Consequently, the Computers and Media endorsement has its own definitions of covered causes of loss and exclusions.

The Computers and Media endorsement provides for covered causes of loss which include physical damage to disks caused by a "head crash." *Id*. at 20. A head crash is physical contact between the read/write head and the platter within the hard drive. *LWG Loss Analysis July 7, 2009* at 32, Dkt. 26-10. In its report, LWG states that evidence of head crash includes "concentric rings or arcs viewable on the surface of the platters" and "irreparable damage" to the read/write head. *Id*. However, LWG's internal examination of the hard drives at issue showed that the read/write heads were fully operational and did not find any of the described rings or arc or any discoloration or viewable patterns to indicate a head crash. *Id*. Ultimately, LWG did not find any physical damage to the hard drives and determined there was no head crash; rather, the bad sectors were caused by wear and tear. *Id.* at 34.

Plaintiff contends that LWG contradicted this finding, thereby creating an issue of material fact, when LWG stated in an email that "[t]he only interaction that will provide a bad sector is the operation between the read/write head and the platter." *Email from S. Prause to M. Scott* at 112, Dkt. 35-5.[2] Plaintiff reads too much into this one sentence. GF&C encourages the Court to infer that either "interaction" or "operation" means "contact" and thus that the only cause of a bad sector is a physical contact between the head and platter (a head crash). The Court declines to do so. Although in summary

---

[2] The context of the email is whether a computer virus could have caused the bad sectors. LWG concludes that no known virus could interrupt the interaction between the head and the platter or cause bad sectors.

**MEMORANDUM DECISION AND ORDER - 11**

judgment the Court views the evidence in the light most favorable to the non-moving party, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin*, 849 F.2d at 1208. It is too far a stretch to infer that this general statement in the context that a virus cannot cause a bad sector means that the only cause of a bad sector is a head crash. Plaintiff does not point the Court to any other triable facts to raise a question as to whether a head crash, or any other covered cause of loss, occurred here. Thus, the record is insufficient to create a genuine issue of material fact that a head crash or other enumerated cause of loss in the Computers and Media endorsement occurred.

Additionally, the Computers and Media endorsement has exclusions specific to the coverage it provides for data and software. Specifically, the exclusions state there is no coverage for loss or damage that results from wear and tear. *Backups Policy* at 22. As previously discussed, LWG's conclusion of wear and tear is not rebutted in the record.

Ultimately, Backups's insurance policy, provided by the Special Property Coverage Form and the endorsements, does not provide coverage for the claimed loss; thus, coverage was properly denied. Accordingly, Backups's Motion for Summary Judgment is granted with respect to the breach of contract claim.

    **B.**    *GF&C*

The GF&C policy is comprised of Standard Property Coverage and Computers and Media, Stretch and Super Stretch for Technology endorsements. Just as with Backups, to find coverage, GF&C's claim had to be for "covered property" which

sustained a "covered cause of loss" resulting in physical damage or direct physical loss. *GF&C Policy* at 30, Dkt. 26-5.

It is not necessary to decide whether GF&C's interest in the hard drives is covered property, because coverage for a claim requires the Plaintiff to demonstrate that the property sustained a covered cause of loss. Specifically, the issue here is whether Plaintiffs can show a genuine dispute of fact over whether the bad sectors on the hard drives were a covered cause of loss.

Unlike Backups's all-risk general policy, GF&C had Standard Property Coverage is a specific peril form; only enumerated causes of loss are covered. *GF&C Reply* at 4, Dkt. 39. The Court agrees with Defendants that none of the thirteen listed covered causes of loss are relevant to the events at issue; Plaintiff does not argue otherwise. *Id*. Therefore, GF&C's general policy does not cover the events at issue.

Additionally, GF&C's policy also included three endorsements which pertain to computers, technology, and media: Stretch, Super Stretch, and Computers and Media. Like Backups's endorsements, the Stretch and Super Stretch endorsements must be analyzed in conjunction with the Computers and Media endorsement because they expressly state they are "subject to the provisions of the Computers and Media [endorsement]." *GF&C Policy* at 7 Dkt. 26-5, at 6, Dkt. 26-6. Thus coverage under the Computers and Media endorsement will determine coverage under the Stretch and Super Stretch endorsements.

The Computers and Media endorsement is identical to that of Backups. Therefore, the coverage and exclusions analysis of the endorsement is the same for GF&C as it was for Backups. In sum, there is no covered cause of loss because there was no head crash. Furthermore there is no coverage for data and software under the endorsement because resulting damage from wear and tear is excluded from the policy.

Thus, GF&C has not met its burden to show sufficient evidence that the event at issue was a covered cause of loss under either the general policy or endorsements. Therefore, summary judgment is granted with respect to this claim.

**2.      Breach of Good Faith and Fair Dealing and Bad Faith**

The causes of action for a breach of the implied covenant of good faith and fair dealing and bad faith both require that the underlying contract was breached. Here, Hartford did not breach its contracts because there was no coverage for the claim under their respective policies. Without a breach of contract, the claims for breach of good faith and fair dealing and for bad faith must fail. Thus, summary judgment is granted with respect to those claims.

**3.      Defendant HSB**

Plaintiffs' counsel acknowledged at oral argument that there is no privity between the Plaintiffs and Defendant HSB. Consequently, there is no contract which can be breached and no implied covenant of good faith and fair dealing or bad faith. Therefore Defendant's Motion for Summary Judgment is granted with respect to those claims.

**4.      Negligent Misrepresentation**

MEMORANDUM DECISION AND ORDER - 14

Defendants move for summary judgment on the negligent misrepresentation claim on the basis that Idaho only recognizes this claim in the narrow context of a professional relationship involving an accountant, which does not exist in this lawsuit. *See Duffin v. Idaho Crop Imp. Ass'n,* 126 Idaho 1002, 1010, 895 P.2d 1195, 1203 (1995). Plaintiffs' did not allege any facts or produce evidence to support that this lawsuit which is between an insurer and its insured also involves a relationship between an accountant and his client. Therefore, summary judgment is granted with respect to that claim.

### 5.     Intentional Interference with a Contract

Four elements must be proven in order to establish a prima facie case for intentional interference with a contract. The plaintiff must show that (1) there was a contract in existence; (2) the defendant knew of the contract; (3) the defendant intentionally interfered with the contract, causing a breach; and (4) injury to the plaintiff resulted from the breach. *Ostrander v. Farm Bureau Mut. Ins. Co. of Idaho, Inc.*, 123 Idaho 650, 654, 851 P.2d 946, 950 (1993).

In this case, Backups and GF&C assert that HSB intentionally interfered with the insurance contracts they had with Hartford. *Backups Compl.* ¶ 7. However, summary judgment has been granted on the breach of contract claims. Consequently, Plaintiffs will be unable to prove the third element of the claim which requires a breach of the contract; Plaintiffs are unable to establish their *prima facie* case. Thus, HSB's Motion for Summary Judgment is granted with respect to this claim.

## ORDER

**IT IS ORDERED THAT:**

1. Defendants' Motions for Summary Judgment (Dkt. 26) are **GRANTED**.

2. The Court will enter a separate Judgment in accordance with Fed. R. Civ. P. 58.

DATED: March 15, 2013

B. Lynn Winmill
Chief Judge
United States District Court